and counsel, when you're ready, proceed, you may. Thank you, Judge Owens, and may it please the Court. Patrick Fooster on behalf of Plaintiff Appellant Shane Love. The Due Process Clause protects parent-child relationships from unwarranted state interference. The only dispute here is how a federal court knows whether a parent-child relationship exists, and the answer, based on every decision of the Supreme Court and this Court to address the issue for a wide range of federal claims, is that federal courts look to state family law. Once state law creates a parent-child relationship, the state can't then arbitrarily interfere with that relationship, including by killing the parent in a manner that shocks the conscience. The city reaches the wrong result because it applies the wrong test. It overlooks, and you can see this in this 28-J letter, that we can plead and prove a due process violation based on conscious, shocking interference with our liberty interests, not only through the fundamental rights framework of Glucksburg. And although the city critiques our reliance on state law, in reality, its test is just as dependent on state law in conceding that marriage, adoption, and guardianship, all state law relationships, can establish a protected liberty interest. Well, you're probably right, but the thing that concerns me is how you actually apply that rule. The question I have, isn't it well established that both the Supreme Court and our court are extremely hesitant to expand the substantive due process rights? Don't we have to bear that in mind? Yes, you do, Your Honor, and I am not asking for an expansion of substantive due process rights in any respect. I'm invoking this court's longstanding precedent, which recognizes that parents and children share a liberty interest in their custodial relationships, and that when the police kill either a parent or a child in a conscious, shocking manner, that violates the due process. Are you saying you could distinguish those cases and that they don't apply at all? No, Your Honor, I'm saying that we fall squarely within those cases because Mr. Thomas was Mr. Love's father under state law. He had full parental rights, including custody, the obligation to provide support. So the only question is whether we're going to carve out a subset of parent-child relationships from existing precedent concerning the substantive due process rights. Counsel, let me ask you this. So a 28-J letter was filed about our Regino case, and I read the case and I read both letters. I want to thank counsel for filing the 28-J. But I had a different take, I think, from both sides, actually. My take is if I read Regino, I say, okay, Regino tells us that the district court should do the Glucksberg analysis, and there's a method for doing that. And the district court, as I read the order, did not do that in this case. If I'm right about that, the district court, I don't think the district court cited Glucksberg, certainly did not do the analysis that Regino prescribes. Now, in defense of the district court, the district court did not have Regino in front of it when the district court was making a decision. Shouldn't we just send this case back to the district court so it can do the Glucksberg analysis in the first instance the proper way, and presumably with the very able counsel we have, hopefully would hang around for district court proceedings, and litigate this case the way Regino says? Isn't that what we should be doing here? We should follow Regino, but this case falls within footnote five of Regino, which noted that this circuit and the Supreme Court have recognized two distinct ways to establish a violation of substantive due process. One is Glucksberg, which is typically addressed toward legislative action, and the claim is that the state has denied a fundamental liberty interest without which you cannot have ordered liberty. That's not this case. The second test is the shocks to conscious test that applies to executive action that interferes with liberty interests. County of Sacramento versus Lewis is the Supreme Court's decision that makes this precise distinction between challenges to legislative action and to executive action. And under that test, we do not have to show a fundamental interest in the sense of Glucksberg that has been carefully described. We have to show only a liberty interest that has been taken away from us in a conscious, shocking manner. That's exactly what this court did in pertain at page 992, look to state law visitation rights, treat it as a liberty interest, and then went on to the other two elements of the test, which are not in dispute here. Has there been a deprivation of that interest? Was it done in a manner that shocks the conscious? So no, Your Honor, I wouldn't ask for a remand under Glucksberg. I'm not going to fight too hard on anything that sends us back down to the district court, but it would be wrong to order for this court for the district court to proceed only under Glucksberg when there is this separate test. So your argument, Dennis, is that even if Glucksberg had never been decided, you're saying just the old kind of the old, my words, the old school shocks the conscience test, that that would still govern here because you're saying we have to assume that the right here falls within that, that nut or that shell of rights, parental rights, correct? Yes, Your Honor. It's even better than if Glucksberg hadn't existed. This is the Supreme Court the year after Glucksberg addressing whether Glucksberg has now filled the field. And it's the only way to prove a substantive due process violation. That was the position taken by Justice Scalia in the concurrence. Justice Souter, writing for the majority of the court, said, no, we have this separate test that applies to executive action. And that makes sense. When you have executive action that has interfered with a state-created liberty interest or an interest that arises directly under the Constitution, there's no governmental interest in allowing conscious, shocking interference to go forward. You don't have the same concerns about judicial lawmaking in the context of executive action interfering with existing substantive rights. But we have to then, to follow what you're saying, then, we have to agree with you that the right existed to begin with, correct? Yes, Your Honor. And I'm happy to discuss where the right comes from and how we've established it. But would Glucksberg help us decide whether that right existed in the first place? If there is a Glucksberg question in this case, it's whether parents and children share a liberty interest in their custodial arrangements. That's the oldest of the fundamental liberty interests that the Supreme Court has recognized, going all the way back to Meyer. So if there is a Glucksberg question here, it's the what question. Right. Is that protected? It's not the who question, which is, which parents who are recognized as such under state law are able to assert those rights? Which children are able to assert those rights? And that's the Supreme Court at page 671 of Berkefell says that Glucksberg does not limit who can assert the rights, it only limits the scope of those rights. But, Jeff, and I want to give my colleagues opportunities to ask questions, but I just want to make sure I understand this. So if, under your view here, if a state, let's say the state of California, passed a law saying in police brutality cases, there are no damages unless the parent is biologically related to the child. You know, let's say under so-called tort reform, they pass a law that says that. You're saying that that law would be unconstitutional. I think California probably just as a matter of preemption could not prescribe the damages which would be available. But, I mean. Well, but we looked, in 1983, we looked at state law all the time to decide. So, I mean, I think the answer to that question has to be yes, right? Yeah. And I think the way you think about it is, has California effectively said, we no longer recognize you as a parent, at least for this purpose, if you do not have a biological connection to the child. I think, yes, then we'd be in the world of Glucksburg. We'd be asking, has the state interfered with some traditional, carefully described right? Right. Okay. Thank you. But if I could quickly address first where I'm getting the test from, why we're looking to state family law, because I haven't pulled that out of thin air. It's been the Supreme Court's standard approach. Okay. I'm sorry. Counsel, can you? I think he can hear me. I can hear you. We can hear you. Go ahead, Judge. Would you have, would your client have had a Fourth Amendment excessive force claim here? No, Your Honor, because the Fourth Amendment would be the personal rights of Mr. Thomas. Here, the reason why Mr. Love is able to bring a claim is because he has his own personal right to his relationship with his father. What if state law conferred a survivorship right on a child? State law has conferred survivorship rights on people in this situation. That would be a different claim. Then we'd be looking at what were Mr. Thomas' claims, and then have they passed by dissent to Mr. Love. But it's a separate question from whether Mr. Love has his own personal claim in this situation. But the availability of a more specific claim governed by more specific jurisprudence like the Fourth Amendment, would it not be a reason to avoid substantive due process as the claim? I understand the question, Judge Fitzwater. And this court addressed that particular issue in Smith v. City of Fontana, which said that the more specific right applies only to the parent who personally possesses it. While the parent would have a Fourth Amendment claim for excessive force and no substantive due process claim because the Fourth Amendment is the more specific provision that already governs that conduct, that Fourth Amendment does not govern the claim by the child who then proceeds under the due process clause. So that's Smith v. City of Fontana. So briefly, why I'm looking to state family law is because this is the standard approach the Supreme Court has taken across a wide range of claims, in federal claims of all sorts. De Silva v. Ballantyne in 1956 said, although the scope of a federal right is a question of federal law, it does not mean that it is not determined by state law. The Supreme Court reaffirmed that in Ashdrew v. Capato, where the court said there is nothing anomalous about looking to state family law to apply the definition of child for a federal claim. Quite to the contrary, I think, were the words of the court. This court took that exact approach for the specific provision here, California Family Code 7611 in Vernoff v. Ashdrew. The city does not cite a single case coming out the other way where a court has said, even though you are a parent or a child under state law, we're still going to disregard that status for purposes of a federal claim. And we know from the Supreme Court's decision in Windsor, it might even violate the Constitution. When Congress tried to do that for marriage, the Supreme Court struck that down. I don't think federal courts are able to do that in the guise of applying the Due Process Clause. Briefly, the city seems to suggest that the holding out presumption is too easy to satisfy or novel. That's not true. Someone doesn't receive the child into the home or hold them out as their own by accident. It doesn't happen overnight. It doesn't happen without the participation of the mother, assuming the mother is still around. California is not an outlier in this respect. The holding out presumption is part of the Uniform Parentage Act. Eleven other states have adopted it by statute, including Texas. And the historical roots of this provision go all the way back to the Reconstruction Era in California as a form of adoption, which even the city says would satisfy its test. And if the city is willing to accept every other aspect of state parentage law except this one, I don't see any basis for drawing a line between our situation and the other ones that they've included. The final and third point is that we've also alleged liberty interests under the Federal Association, right? That looks to many of the same considerations. Has the parent made an enduring assumption, made an enduring commitment to assume parental responsibility, even when not required to do so by state law? California family law looks to the same considerations in assigning parental rights in the first instance. And it should give this court comfort that both the federal cases and the state statute are pointing in the same direction. We've established a liberty interest in our client's relationship with his father. I'll reserve the remainder of my time without no further questions. Very well. Thank you. Good morning, and may it please the court. My name is Stephan Love, and I'm here on behalf of Viacona et al. And I want to begin by clarifying a mischaracterization of the test that plaintiff's counsel offered. The shocks the conscience test is not a substitute for showing infringement of a fundamental liberty interest. The very case plaintiff relies on for the contrary proposition demonstrates why this is the case. This is the Bretain v. Hansen case. The court's analysis there begins by saying substantive due process is ordinarily reserved for those rights that are fundamental. The court then says Bretain, the plaintiff, must show, number one, a deprivation of her liberty, number two, conscience-shocking behavior. At step one, where the court analyzes visitation rights, roughly as plaintiff has described, the court then says, repeats the idea that substantive due process vindicates those interests which are fundamental. And when the court concludes that section of its analysis, the court says, regardless whether visitation rights, the rights at issue, may be a fundamental liberty interest such that you could support substantive due process claim, we do not believe a single instance of visitation is a fundamental right, is a fundamental right. So, again, even in a case like Bretain, applying the shocks the conscience test exactly as plaintiff characterizes it, the test is not a replacement. Plaintiff had to show fundamental liberty interest infringement as well as conscience-shocking behavior. There's a footnote in the Supreme Court case plaintiff's counsel cited, County of Sacramento v. Lewis. Sorry, go ahead. Which Supreme Court? That would be County of Sacramento v. Lewis, U.S. Supreme Court, the 1998 decision, which has a lengthy analysis of the shocks the conscience standard. Footnote 8 there addresses a concern raised by Justice Scalia in dissent. Footnote 8 from the majority decision says, actually, shocks the conscience is not a replacement for showing a fundamental liberty interest rooted in history. I'm going to quote a little bit from that footnote from County of Sacramento, if I may, which shows that the antecedent question is conscience-shocking behavior. If that is shown, the plaintiff then must show a liberty interest that is rooted in history. So this is from that footnote 8. A case challenging executive action on substantive due process grounds presents an issue antecedent to any question about the need for historical examples. That would be this rooted in history and tradition. The footnote goes on, only if the necessary condition of egregious behavior were satisfied, the condition of showing that first element, would there be the possibility of recognizing a substantive due process right? Only then might there be a debate about the sufficiency of historical examples of the right claimed or its recognition in other ways. So that footnote plus Bretain, which expressly and repeatedly uses the phrase fundamental liberty interest, makes clear that showing conscience-shocking behavior does not relieve a plaintiff asserting a substantive due process claim of showing that the liberty interest was fundamental. So this brings us right back to Glucksburg, where plaintiff has not even attempted to show what he must. This is a careful description of the asserted fundamental liberty interest, issuing sweeping generalizations. You can't just lump together every relationship that might fall under the umbrella parent-child. Instead, I'm going to quote again from Regino, the interest asserted is objectively deeply rooted in this nation's history and tradition, implicit in the concept of ordered liberty. These are the most fundamental rights that our nation recognizes that these claims are reserved for. And the court goes on to caution in Regino, this court should exercise the utmost care before breaking new ground in this area of unenumerated fundamental rights. Well, it is a difficult area. There's no question about it. But somebody's got to decide where. And that's the concern I have. We have a lot of cases that have been decided by the Supreme Court. And we, of course, are going to follow them. And if we have cases in our court, we will follow them. But isn't adoption governed by state law? And if courts are found to be adoptive parent-children relationships, wouldn't they be protected under the due process clause, even though there are state law issues? Potentially, I can see that. What I have actually not seen in any case cited in the briefing here is a decision of this court or the U.S. Supreme Court holding that an adoptive parent has a fundamental liberty interest in the parent-child relationship. That decision has not yet been made. Well, maybe it should be made. Maybe we should send the case back to the trial court. That would be a different case from this one because Mr. Thomas was not the adoptive parent of Mr. Love. That case does not exist. It's not this one. Well, it's not an adoptive parent. It's a symbol of an adoptive parent that the state has been working with. It used to be in my young life why people live in a certain way when they're married or not married. Now we've had to develop some law that's not specific, but it governs situations that happen quite often in the state of California. Why should we not return this to the trial court to make some findings and decisions on the strength of the state law and where that would apply? Remand would not be necessary for two reasons. First, for the reason I explained, there's no history and tradition of recognizing this form of relationship. It's a relationship, to be clear, where the California statute defines any relationship between an adult and any child that adult has taken in and cared for and held out as their own. That's it. That's the sum total of requirements. And what case do you have where it says specifically that's the sum total, that there's no cases in any of the appellate courts of California that gives any legs to such an argument? I'm not drawing that from case law. I'm drawing that from the text of Cal Family Code 7611D itself. The requirements of it are going to apply whenever any adult has taken in a child and cared for that child and held them out as his own. That is an association requirement. But a series of cases from the U.S. Supreme Court and this court have held or suggested that you need association plus biology to show biological parenthood, to show the parent-child relationship. Never has something more broadly than that been held to create a fundamental liberty interest. And I expect plaintiffs might come back and cite Michael H. v. Gerald D. The problem with that case is there was the parent plaintiff there was Michael H., and he was the biological parent who didn't have the necessary association. And the Supreme Court there, U.S. Supreme Court held there's no fundamental liberty interest in his relationship with his daughter. His daughter lived with the biological mother and her new husband. Now, that new husband's liberty interest in his relationship with the child was not at issue, was not a question before the court. So that case does not show in either direction that a step-parent such as Gerald has that fundamental liberty interest. You might assume it or you might assume he doesn't, but it wasn't at issue in that case. There's a final point I want to make, and this is what exactly are the rights that Section 7611D confers. They are procedural rights. Procedural rights. Now, this court has a very clear test when deciding whether a state law can support a due process claim. A procedural state law cannot do so. I'm going to quote from James v. Rowlands. This is the 2010 Ninth Circuit decision, but the test I'm going to quote repeats in a number of cases. There's two parts. The state law must contain substantive predicates governing official decision-making and explicitly mandatory language specifying the outcome that must be reached if the substantive predicates are met, and it must be a substantive outcome to be reached. James v. Rowlands held that a statute requiring notice, requiring notice with mandatory language, did not satisfy this test because notice is a procedural benefit. In contrast, when a state law has supported a due process claim, it has been, for example, a state statute saying, quote, an arrested person has the right to make at least three phone calls. That's Carlo v. City of Chino. That is a substantive entitlement the state law directly confers on certain people. Or in Marsh v. County of San Diego, there was a due process claim there that stood on a state statute, no copy shall be made of an autopsy picture. Those are substantive mandatory limits on state action. 7611D is not that. It makes a promise, but it is a procedural promise. It promises a presumption, a presumption that a person satisfying certain circumstances showing them gets the benefit of the presumption that they're the natural parent. But it is the nature of a presumption that it doesn't confer anything substantive directly. It comes into play only when a proceeding has occurred in which the presumption is relevant. So at the moment this incident occurred, neither Mr. Thomas nor Mr. Love derived any substantive benefit from 7611D. Now, it's important to analyze this at the moment of the incident. It's quite true down the line maybe some state court or the district court could go ahead and test that presumption. But if that were to occur, it would then be that later court action that would confer the substantive entitlement on Mr. Love. Until that has occurred, until the presumption has been called into the courtroom to play its role, there's nothing substantive that's been provided to Mr. Thomas or Mr. Love under the state statute the plaintiff cites. Procedural protections do not create due process claims. And I'll quote once more from James V. Rowlands, when a state establishes procedures such as 7611D, the state does not thereby create a new constitutional right to those procedures. Another quote from James V. Rowlands, a state does not create new constitutional rights by enacting laws designed to protect existing constitutional rights. So even as plaintiff characterizes it, 7611D might be said to protect certain forms of parent-child relationship. Well, maybe that's the case. Under James V. Rowlands, that's not the kind of state law that can support any type of due process claim. No matter how fundamental or not, a liberty interest must be shown. So to follow up on the questions I had for opposing counsel, I appreciate the 28-J letter. One reading of Regino is that this case should go back so it can do the Glucksberg analysis, which did not happen. What's your response to that? I think that there's ample material here for this court to apply the Glucksberg analysis. This is a question of law. We're up here on a 12b-6 dismissal. This court is just as well situated, if not better, being a court designed to apply the law to perform that analysis on this complaint. You don't think Regino requires us to send it back? I don't. And the other difference between Regino in this case is in Regino, the plaintiff kind of switched around. What was the liberty interest they were asserting? Here, the plaintiff has been clear that he believes that the pleadings established his case falls within this parent-child relationship line of cases. While this court can look at those cases for itself and apply them, there's no need to kind of adjust for the shifting characterization of it. There's been a consistent characterization that is inadequate under binding case law. Sometimes when everything isn't clear before us and we find it was not clear before the district court, we choose to send it back because we don't know all of the ins and outs of what's going on in a state court. We're somewhat hesitant to tell them what their law is. This issue that you raise is a very critical issue. It's how we treat a child who has someone who is not officially his father, but he believes he is his father. That's fundamentally a state issue. It's not procedural at all. I feel somewhat undressed going ahead without having a court take a look specifically at this very important issue that you raise. I know we very often get our cases over into state courts, which they object to very often. But having said that, this issue is a very fundamental one that will affect the lives of literally thousands of people. It is not just a simple case, and caution sort of tells me we need more. Aside from following the suggestion made by my colleague, is there some other way that we can get the type of information that we could, as a substitute for the trial court looking into it and perhaps taking even evidence? This court could issue an order for further briefing on some narrow topic or set of topics, if that would assist the decision making. That would be something short of remand. But looking back at that district court decision, I think it was well-rounded in the precedent that I and my opposing counselor are citing. I'm going to quote from one line there. Even if Thomas, the decedent, was plaintiff's presumed parent under California Family Code 7611D, he nonetheless lacks any biological or legal connection to Thomas, and therefore has no protected liberty interest in their relationship. That's applying settled due process precedent to reach that result. I don't see any issue in that analysis. Even if the court didn't cite Glucksberg in particular, it applied the correct test. If there are any further questions, I'm happy to take them. Otherwise, I'll step down. Thank you. Thank you, counsel. Thank you. I have three points. First, I heard the city's test unravel at the lectern today. They have said since day one that adoption, marriage, and guardianship can all establish a protected interest. I heard today that adoptive parents and adoptive children might no longer have constitutional rights, that parents who establish parentage under the marital presumption, which is the historical common law presumption, might also not have constitutional rights. And I heard that there wasn't a case saying that, and I do have one here. This is Smith v. Offer for the Supreme Court, which said, biological relationships are not the exclusive determination of the existence of a family. The scope of these rights extend beyond natural parents, the parent and prince itself, the prince versus Massachusetts, was the child's aunt and legal custodian. And on the next page, the Supreme Court says adoption is recognized as the legal equivalent of biological parenthood. So the fact that the city's reading of Glucksberg has led it to abandon its own test and has reached the unusual circumstance where people who establish parental rights under the marital presumption, the traditional one, and adoption would not have rights is a sign that the city has taken a wrong step in its analysis. I want to point out the city did not even cite Glucksberg below because we were proceeding under the shocks of conscience test. And even if we are to look at history, as I pointed out, this presumption here originated as a form of adoption in the Reconstruction era. So if the court decides that we should be looking at this through the lens of Glucksberg, I think we win, one, because the liberty interest shared by parents and children is the oldest of the liberty interests recognized by the Supreme Court. And even if we are going to focus on the particular configuration of the parent and the child, which is what the Supreme Court told us not to do in Obergefell, we'd still have a very strong argument based on history. So, counsel, let me ask you about a case I should have asked you about earlier. There's a case called Buckland. I'm sorry, Backland, which I think has some pretty rough language for you. Walk me through why that case is not bad for you. I'm happy to, Your Honor. So that case involved foster parents. And what happened is that the state had taken the child out of the foster home because the foster parents were beating the child with a belt, allegedly because the religious convictions required them to do so. And the court rejected the claim by the foster parents to reinstate the child into their home for two reasons. The first was that foster parents and natural parents don't necessarily share the same rights. What the court said was, just because you have a status under state law, it does not mean you're able to leverage that status to assert the rights of the natural parent. And this was the key language that came just after the quote I think you're referring to. The court pointed out that it was significant that the state retain discretion to remove the child from the home. So to go to the analysis of was there a substantive entitlement to custody, the answer was no. It was purely discretionary. So that perfectly works with our state-created liberty test. It's because state law did not create the custody right that the plaintiff was asserting in that case. The second point I want to make was that Regino footnote 5 very clearly says that the Supreme Court has applied two different legal standards to substantive due process claims. One is the fundamental rights standard we apply here. The other is the shocks to conscious standard. And the two decisions that the Ninth Circuit cites there both point out that this is a disjunctive test. There are two independent ways to establish the claim. That's why you don't see a Glucksberg analysis in this line of cases involving police brutality against parents and children. Right. But we have to assume that there is a right recognized to begin with. Yes. The liberty interest that's shared by parents and children. The sort of antecedent question of how you know whether the person is a parent or a child. Right. I think that's answered by state law. I think that's clearly not a Glucksberg question, as the Supreme Court said in Obergefell. Okay. Very well. The third point I want to make was that Mr. Thomas was officially Mr. Love's parent. This was not a matter of just belief or expectation. The California courts have been very clear. The presumptions establish parental rights by operation of law. They exist out there in the real world. They do not depend on some court coming in later to give them official sanction. Every father in California is a presumed parent. That's the terminology of the California Family Code used. If you're married to your wife at conception and at birth, you're a presumed parent just in the same way that Mr. Thomas was a presumed parent. And I think we have a very strong case. I did not hear any argument otherwise about whether we've pleaded the two elements of the holding out presumption. Mr. Thomas raised Mr. Love from the age of one after his biological father died when he was seven months old. Mr. Love believed that Mr. Thomas was the biological father until he was 12. This is a clear-cut application of 7611D, and it fits squarely within this court's cases like Bertain and Murguia that have looked to state family law for a shocks to conscience claim. If there are no further questions. All right. Thank you, counsel. Thank you to both of you. It's my understanding that both of you clerked for Judge Watford. That's right. And was that back-to-back years? I think we had a year in between. I think it was two. All right. I will let him know that both of you did a fine job today, and then now we all know. I want to second that. Both of you were very well prepared. This is not an easy issue. These are the ones you lose sleep over. And I feel much better prepared. Whether you win or lose, I think you have prepared me as best you possibly can to make the right decision. And thank you very much for the time and effort and the excellent arguments we've heard. And Judge Watford can watch it on video, and I'm sure he'll have some advice for you. But, anyway, we thought you did a great job. So, anyway, thank you both. And this special session is adjourned. Thank you. All right. This part of the session is adjourned. She's going to bring her walker around. All right.
judges: WALLACE, OWENS, Fitzwater